# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KLAUS SASSMANNSHAUSEN, | : | CIVIL NO. 3:17-CV-1244 |
| Petitioner, | : | (Judge Mannion) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| CLAIR DOLL, et al., | : | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

### I. Factual Background

On July 17, 2017, Klaus Sassmannshausen filed a petition for writ of habeas corpus which alleged that the petitioner, an alien who had previously resided in the United States, had been placed in removal proceedings, and has been detained pre-removal pursuant to a mandatory detention statute for more than six months without any individualized bond consideration. (Doc. 1.) With the passage of more than six months since he had initially come into immigration custody, the petitioner came before this Court on this petition for writ of habeas corpus, seeking bond consideration. We directed a response to this petition, which was filed on August 10, 2017, and in that response the respondents acknowledged the following essential facts:

1

The petitioner, Klaus Sassmannshausen is a citizen and native of Germany who has resided in the United States for the past 60 years, since on or about June 26, 1956, as a lawful permanent resident. On April 4, 2004, Sassmannshausen was convicted of Simple Assault and sentenced to one year probation. On December 17, 2013, Sassmannshausen was convicted of Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver, to wit: Marijuana and sentenced to 36 to 60 months imprisonment.

On June 14, 2016, immigration officials issued a Notice to Appear charging Sassmannshausen as removable from the United States pursuant to Sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the Immigration and Nationality Act (INA). Specifically, it was alleged that Sassmannshausen was subject to removal due to his convictions for an offense relating to the illicit trafficking in a controlled substance and for conspiracy to commit any law involving a controlled substance. Sassmannshausen was taken into immigration custody and has remained in ICE custody since June 14, 2016, a period which now exceeds one year.

On May 5, 2017, an immigration judge ordered that Sassmannshausen be removed and his application for deferral of removal under Article III of the Convention Against Torture was denied. On May 31, 2017, Sassmannshausen filed his appeal to the Board of Immigration Appeals (BIA). On June 2, 2017, the

BIA acknowledged receipt of Sassmannshausen's appeal. Sassmannshausen's appeal is still pending before the BIA and the petitioner remains detained on these immigration matters without any individualized bond consideration.

Given the passage of time following his initial detention and in light of the fact that he could perceive no immediate conclusion to these immigration proceedings and his detention, Sassmannshausen filed the instant habeas corpus petition on July 17, 2017. (Doc. 1.) In this petition the petitioner recited that his detention without bond consideration had exceeded six months and averred that there was no foreseeable conclusion to this period of pre-removal detention. On the basis of these averments Sassmannshausen sought federal habeas corpus relief.

The respondents have now replied to this petition, (Doc. 4.), acknowledging that the petitioner has been detained pre-removal in excess of 6 months pursuant to a mandatory detention statute applicable to certain criminal aliens held in removal proceedings. Given these undisputed facts, the respondents do not appear to contest that Sassmannshausen may now be entitled to some form of individualized bond consideration but instead simply recommend that: "If this Court determines that a discretionary bond hearing is warranted under the facts and circumstances of this case, respondent will coordinate with the immigration court to schedule a bond hearing before an immigration judge as expeditiously as possible." (Doc. 4, p.8.) In light of this apparent concession by the Government, it is recommended that the

district court grant the petition and order an individualized bond hearing for Sassmannshausen to be conducted before an immigration judge, something the government appears to concede should take place in this case.

**II.    Discussion**

One of the statutory and constitutional duties conferred upon this Court is the responsibility to address federal habeas corpus petitions filed by immigration detainees who challenge their immigration detention as unconstitutionally excessive. Over the past several years, case law in this field has evolved significantly, providing far greater clarity to the courts regarding the benchmarks they should apply when discharging this important responsibility, a duty rooted in our Constitution.

In Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469 (3d Cir. 2015), the court of appeals has provided us with an analytical paradigm to apply when assessing these immigration excessive detention claims in a pre-removal context. As the court explained in outlining the legal terrain in this field:

> Before 1996, significant numbers of aliens convicted of serious crimes were taking advantage of their release on bond as an opportunity to flee, avoid removal, and commit more crimes. Demore v. Kim, 538 U.S. 510, 518–19, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). Congress fixed this problem by enacting section 1226(c), expanding the range of serious crimes for which the Government was required to detain convicted aliens. Notably, section 1226(c) does not give the Attorney General any authority to release these aliens on bond. Id. at 521, 123 S.Ct. 1708. The Supreme Court left no doubt that the Government's authority under section 1226(c) to detain aliens without an opportunity

4

for bond complies with the Constitution. Id. at 531, 123 S.Ct. 1708. However, as we discuss below, we read Demore as also recognizing that there are limits to this power. Diop, 656 F.3d 221; Leslie v. Attorney Gen. of the United States, 678 F.3d 265 (3d Cir.2012). When the Supreme Court upheld the constitutionality of the law in Demore, it also gave us insight into how, from a due process perspective, section 1226(c)'s allowance of detention without bail worked. The Court reiterated the fundamental idea that aliens are protected by constitutional due process. Demore, 538 U.S. at 523, 123 S.Ct. 1708 (citing Reno v. Flores, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)). But, it put the alien's issue in perspective, saying " '[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.' " Id. at 521, 123 S.Ct. 1708 (quoting Mathews v. Diaz, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)). The Court went on to say that applying " 'reasonable presumptions and generic rules' " to groups of aliens—for purposes of due process—can be consistent with the idea that aliens can be treated differently. Id. at 526, 123 S.Ct. 1708 (quoting Flores, 507 U.S. at 313, 113 S.Ct. 1439); see also Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952). The Court, in essence, concluded that Congress lawfully required the Attorney General to make presumptions of flight and dangerousness about the alien solely because he belonged to the group of aliens convicted of the types of crimes defined in section 1226(c).

Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 472(c)73 (3d Cir. 2015).

Thus, the court in Chavez-Alvarez recognized that Demore held that mandatory detention of certain criminal aliens pending removal proceedings does not, by itself, offend due process. However, the Demore Court based this ruling upon its understanding of the short, fixed and finite term of any detention prior to removal which typically should not exceed 6 months. Yet, while Demore addressed the due process issues that arise from the fact that, for certain criminal

5

aliens, detention pending removal is mandatory, it is also clear that courts still have an independent responsibility to assess whether the duration of any mandatory detention is so extended and unreasonable as to violate due process.

Further, the court in Chavez-Alvarez provided us with clear guidance in assessing the reasonableness of the duration of any mandatory immigration detention. This determination entails a balancing test, and while noting that "[b]y its very nature, the use of a balancing framework makes any determination on reasonableness highly fact-specific," Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 474 (3d Cir. 2015), the court enjoins us that there are several guideposts which we must consider. First, in a case where an alien is prosecuting a good faith challenge to his or her removal from the United States, the appellate court held that, "beginning sometime after the six-month time frame considered by Demore, and certainly by the time [the alien] had been detained for one year, the burdens to [the petitioner's] liberties outweigh[] any justification for using presumptions to detain him without bond to further the goals of the statute. We conclude that the underlying goals of the statute would not have been, and will not now be undermined by requiring the Government to produce individualized evidence that [the petitioner's] continued detention was or is necessary." Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 (3d Cir. 2015).

In prescribing this six-month-to-one-year time frame during which the presumption of detention is sufficiently eroded that individualized bond consideration is necessary, the appellate court also defined what showing the government must make in order to justify the continued detention of the petitioner. According to the court, the immigration statute " 'implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.' " Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 475 (3d Cir. 2015). Further, once "detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011).

Applying Chavez-Alvarez to the facts of this case, we conclude–and the government does not dispute–that the petitioner has made a *prima facie* showing justifying an individualized bail hearing. Thus, all parties agree that the current duration of Sassmannshausen's pre-removal detention falls beyond the six-month-to-one-year time frame which Chavez-Alvarez described as the period of time

within which the presumption that detention is reasonable erodes, compelling the necessity of an individualized bail hearing.

Finding that an individualized bail hearing is appropriate in this case, it is recommended that this Court order that an immigration judge in the first instance conduct this individualized bond hearing. Indeed, in Chavez-Alvarez, the appellate court suggested that, in many instances, this initial bond determination can, and should, be made by the immigration judge, applying the constitutional benchmarks outlined by the courts. Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 n.12 (3d Cir. 2015). This guidance, in turn, is consistent with other case law in this field, where federal courts have frequently referred these bond questions to immigration judges in the first instance. See, e.g., Casas-Castrillon v. Dep't of Homeland Security, 535 F.3d 942 (9th Cir. 2008); Reid v. Donelan, 991 F. Supp. 2d 275 (D. Mass. 2014); Chen v. Aitken, 917 F. Supp. 2d 1013 (N.D. Cal. 2013); Sengkeo v. Horgan, 670 F. Supp. 2d 116 (D. Mass. 2009); Bourguignon v. MacDonald, 667 F. Supp. 2d 175 (D. Mass. 2009); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008). Moreover, this course of action is entirely consistent with settled case law directing such hearings before immigration judges for petitioners whose pre-removal detention falls within the ambit of the ruling in Chavez-Alvarez. See e.g., Vale v. Sabol, No. 1:15-CV-2249, 2015 WL 8602751, at *1 (M.D. Pa. Dec. 14, 2015);

Singh v. Sabol, No. 1:14-CV-1927, 2015 WL 3519075, at *1 (M.D. Pa. June 4, 2015), appeal dismissed (Sept. 9, 2015).

Finally, we note that while we recommend that such a hearing be conducted in this case, nothing in this recommendation should be construed as suggesting what the outcome of that hearing should be. We leave that assessment to the sound discretion of the immigration judge in accordance with the dictates of the Court of Appeals in Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 (3d Cir. 2015).

### III. **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the district court GRANT the petition and order an individualized bond hearing for Sassmannshausen within 21 days in accordance with the dictates of the United States Court of Appeals in Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 (3d Cir. 2015).

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall

make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of August 2017.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge